UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)	Date:  August 31, 2016
Title:	Charles Antuna et al. -v- County of Los Angeles et al.

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**  ORDER RE DEFENDANT SHERIFF LEROY BACA'S MOTION FOR A NEW TRIAL [420]

Before the Court is Defendant Leroy Baca's Motion for a New Trial (the "Motion").  (Docket No. 320).  Plaintiff Rocio Martinez filed an Opposition (Docket No. 425), to which Defendant filed a Reply.  (Docket No. 427).

The Court held a hearing on the Motion on **August 26, 2016**.  Considering the papers and the arguments of counsel at the hearing, the Motion is **DENIED** *in part* and **GRANTED** *in part*.  The jury's decision to award non-economic damages was supported by the clear weight of the evidence and was not improperly influenced by misconduct by Plaintiff's counsel.  The magnitude of the award, however, was so grossly excessive so as to shock the judicial conscience, and therefore a remittitur is necessary for justice to prevail.  Comparison to the verdicts in the first trial (if the law so allows) is a second and independent basis for remittitur.  Accordingly, the Court denies the request for a new trial conditioned upon Plaintiff's acceptance of a remittitur that would reduce the amount to **$320,000**.

## I.   BACKGROUND

The Court has laid out a summary of this case in its Order filed March 1, 2016 (Docket No. 350), and does not repeat those facts here.  The Court does, however, briefly relate the trial outcome relevant to this Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)        Date:  August 31, 2016
Title:    Charles Antuna et al. -v- County of Los Angeles et al.

On June 7, 2016, a jury trial began on the limited issue of Plaintiff's non-economic damages. The jury was instructed to consider only this issue because Defendant's liability for retaliating against Plaintiff had already been established as a matter of fact by a prior jury verdict. (Docket No. 282). That first jury had also decided the issue of Plaintiff's economic damages. (*Id.*).

After hearing the testimony of five witnesses and receiving four exhibits, the second jury deliberated and returned on June 10, 2016, a verdict awarding Plaintiff $750,000 in past and present non-economic damages and $0 in future non-economic damages. (Docket No. 403).

## II.   DISCUSSION

### A.   Legal Standard

Juries perform a vital role in our system of justice, and a jury was constitutionally required in this action under the Seventh Amendment. As triers of fact, jurors become a part of the court itself, and judges are "rarely entitled to disregard jury verdicts that are supported by substantial evidence." *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058 (9th Cir. 2003) (holding that order for new trial violated the Seventh Amendment in disregarding jury's second verdict following resubmission to jury of initial inconsistent special verdict).

When a jury's award is challenged as excessive, as is the case here, the role of the trial court is to "determine whether the jury's verdict is within the confines set by [the governing] law, and to determine by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 435 (1996) (vacating judgment of the Court of Appeals and instructing remand to the district court to reconsider whether jury verdict "materially deviates from what is reasonable compensation" in light of applicable state law).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)					Date:  August 31, 2016
Title:	Charles Antuna et al. -v- County of Los Angeles et al.

A district court may, in its discretion, "grant the motion and order a new trial on damages[,] deny the motion and reinstate the judgment in favor of [Defendant] and against [Plaintiff], or grant a remittitur with the alternative of a new trial if the remittitur is not complied with." *Milhouse v. Travelers Commercial Ins. Co.*, 982 F. Supp. 2d 1088, 1093 (C.D. Cal. 2013) (citing *Minthorne v. Seeburg Corp.*, 397 F.2d 237, 244–45 (9th Cir. 1968)) (granting remittitur of $1.275 million in foreseeable special damages and ordering the plaintiffs to accept remitted amount of $402,000 or a new trial on the issue of breach of contract), *aff'd,* 641 F. App'x 714 (9th Cir. 2016).

	1.	Motion for a new trial

On occasion, a new trial may be granted on certain "historically recognized" grounds.  *See* Fed. R. Civ. P. 59(a) ("A new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003) (when deciding whether to grant new trial, courts are "bound by those grounds that have been historically recognized").

The Ninth Circuit has previously indicated that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)); 11 Charles A. Wright et al., *Federal Practice and Procedure* § 2805 (3d ed. & 2015 Supp.) ("It has been said that the general grounds for a new trial are that the verdict is against the weight of the evidence, that the damages are excessive, or that for other reasons the trial was not fair, and that the motion also may raise questions of law arising out of substantial errors in the admission or rejection of evidence or the giving or refusal of instructions.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 14-5600-MWF (PLAx)      Date: August 31, 2016
Title:    Charles Antuna et al. -v- County of Los Angeles et al.

### 2. Motion for remittitur

A motion for remittitur of a jury verdict is subject to the same standard as a motion for new trial under Rule 59. *In re Hawaii Fed. Asbestos Cases*, 734 F. Supp. 1563, 1572 (D. Haw. 1990) (granting remittitur on special damages because the jury's award exceeded the evidence that even plaintiffs' expert presented regarding the cost of medical monitoring in asbestos litigation). Remittitur is appropriate for "any damage award [that] [the] court in its discretion finds excessive." *Id.* Instead of vacating the judgment and ordering a new trial because of excessive damages, the court has the discretion to deny any motion for new trial conditional upon the plaintiff's filing of a remittitur in a stated amount. *Watson v. City of San Jose*, 800 F.3d 1135, 1143 (9th Cir. 2015) (affirming order for a new trial in § 1983 action because the damages award was excessive and likely based on conduct for which the officers were not liable).

If the plaintiff "does not consent to the reduced amount, a new trial must be granted." *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983) (holding that the district court had erred in concluding that the damages were excessive but still entering judgment on the original jury verdict). On the other hand, if the plaintiff "accepts the remittitur, judgment must be entered in the lesser amount." *Id.*

Where the court decides to offer the option of a remittitur, the jury's verdict should be reduced to the "maximum amount sustainable by the proof," so as to ensure that the court's judgment is not substituted for that of the jury. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (affirming remittitur of jury's award of $1.3 billion in hypothetical-license damages to $356.7 million properly reflected the maximum amount sustainable by proof).

### B. Motion for a New Trial, or Alternatively, Remittitur

Defendant argues that the Court must grant a new trial because the verdict was (1) inconsistent with the clear weight of the evidence; and (2) improperly influenced

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 14-5600-MWF (PLAx)     Date: August 31, 2016
Title:     Charles Antuna et al. -v- County of Los Angeles et al.

by Plaintiffs' counsel's misconduct at trial. (Motion at 6). Alternatively, Defendant seeks a remittitur on the basis that the damages award is excessive and the product of passion or prejudice. (Motion at 6, 12–13).

### 1. Clear weight of the evidence

When the movant's Rule 59 motion is based on insufficiency of the evidence, the Court will grant the motion only if the verdict is "against the great weight" of the evidence, or "it is quite clear that the jury has reached a seriously erroneous result." *EEOC v. Pape Lift, Inc*., 115 F.3d 676, 680 (9th Cir. 1997); *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) (Under Rule 59, a trial court may grant a new trial "if the jury verdict is contrary to the clear weight of the evidence.").

The thrust of Defendant's argument is that the primary evidence supporting Plaintiff's alleged emotional distress was never introduced during the first trial. (Motion at 7–8). Specifically, Defendant argues that evidence regarding the dangers of Plaintiff's reassignment was never the subject of the first trial; instead, the first trial focused on the emotional distress caused by being "rolled-up" and transferred to a position that greatly inconvenienced Plaintiff and her responsibilities towards her daughter. (*Id.* at 7–8 ("Apart from Martinez's own self-serving testimony at the second trial regarding her 'fear' and 'dangerous' assignment, there has been no evidence to substantiate these claims and they were not considered by the prior jury in determining liability.")).

Defendant's argument is not persuasive. It does not follow that the second jury's verdict is unsupported by the clear weight of evidence because the evidence introduced in the second trial was absent from the first trial. The touchstone is whether the second jury's verdict is supported by the clear weight of evidence that the second jury heard.

At the second trial, Plaintiff testified not only about the effects of being "rolled-up" and the impact of the transfer on her living arrangements but also about

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)				Date:  August 31, 2016
Title:	Charles Antuna et al. -v- County of Los Angeles et al.

her fears arising from the dangers inherent in her new assignment.  Furthermore, testimony from Commander Hebert, Commander Gerhardt, and Dr. Peters also served to corroborate certain portions of Plaintiff's own testimony.

	Although the Court will address below the magnitude of the award, the jury's decision to award non-economic damages is supported by the clear weight of evidence.

	In his Reply, Defendant focuses his arguments on a challenge as to the causation between Defendant's retaliatory act and the subsequent emotional distress Plaintiff suffered.  (Reply at 3 ("The jury was misled to believe that all these irrelevant illnesses, ailments, and fears up until the time of trial, almost three years after Sheriff Baca left [office], were somehow attributable to Sheriff Baca.")).  Defendant has not provided the Court with any authority in support of his argument that his liability is extinguished at the time he left office.  Quite the contrary, it is well-established that, in § 1983 cases, "[t]he requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207–08 (9th Cir. 2011) (internal citations omitted) (holding that inmate sufficiently alleged a supervisory liability claim of deliberate indifference against the sheriff).

	The jury was free to determine that Plaintiff would have been transferred even in the absence of the retaliation, or that she was whining about performing the job of a Custody Assistant — the precise job for which she had been hired and had previously performed.  The jury evidently chose to do otherwise.
	Defendant also argues that the verdict is improperly supported by evidence that should not have been admitted at trial.  Defendant argues that "[a]ll the job-related illnesses and injuries that Martinez testified to in the [second] trial, including contracting MRSA, admittedly stemmed from her job as a Custody Assistant and, as such, fall within the ambit of Worker's Compensation.  [Therefore,] [t]he jury based

---

**CIVIL MINUTES—GENERAL**                                                        6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 14-5600-MWF (PLAx)      Date: August 31, 2016
Title:     Charles Antuna et al. -v- County of Los Angeles et al.

their verdict on misplaced evidence and the verdict is therefore not supported by the evidence." (Reply at 7). Defendant's briefs, however, do not argue that a new trial is required based on what he believes were erroneous evidentiary rulings.

Furthermore, although Plaintiff's counsel asked the jury to award Plaintiff future non-economic damages to compensate her for contracting MRSA, a lifelong disease, the fact that the jury declined to award any future non-economic damages suggests that the jury did not base its award of past and present non-economic damages on the evidence of MRSA. Finally, even if Defendant is correct that evidence of Plaintiff contracting MRSA should have been excluded, the Court would nevertheless conclude that the clear weight of evidence regarding the other emotional distress Plaintiff suffered, including the shame and humiliation of being "rolled-up" as well as emotional distress from the effects of "freeway therapy," still support the jury's verdict to award non-economic damages.

It was obvious at the first trial, the second trial, and now that Martinez is by far the most sympathetic of all eight Plaintiffs and deserves the most non-economic damages. She had the lowest rank, the least control over her working conditions, suffered the most day-to-day from the retaliation, and evidenced the most emotion over her humiliation. Her life changed because she was the best friend of Paul Tanaka's wife.

### 2. Plaintiffs' counsel's conduct at trial

Defendant argues that Plaintiff's counsel misstated evidence, argued unsupported inferences or matters not in evidence, and made improper references to Defendant's wealth. (Motion at 9–11).

As a preliminary matter, the Court rejects Defendant's argument that "[d]escribing Plaintiff as being placed in a 'dangerous' condition [amounted to Plaintiff's counsel] misstating evidence, especially since this was not an issue ever

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)        Date:  August 31, 2016
Title:  Charles Antuna et al. -*v*- County of Los Angeles et al.

considered in the prior trial to determine liability." (Motion at 10–11). For the reasons discussed above, this argument fails.

Defendant also argues that Plaintiff's counsel "repeated to the jury issues pertaining to liability, and that Martinez was retaliated against." (*Id.* at 9). As Plaintiff correctly points out, however, this was necessary context and also a part of the Statement of the Case that the Court provided to the potential jurors at the beginning of trial. Based on the Court's recollection of trial, the Court does not agree that Plaintiff's counsel's remarks regarding Defendant's liability and retaliation, which had been established as a matter of fact by the first jury, were inappropriate.

Finally, Defendant argues that Plaintiff's counsel improperly referred to Defendant's wealth in closing argument. (Motion at 11). In support, Defendant cites to the following passage from Plaintiff's counsel's closing argument:

> [A]s I was thinking about these damages, I thought about this election. How much money do these candidates spend simply to get a job? We hear about millions and millions of dollars spent by the people running for president, by the people running for Senate, by the individuals running for local office. It's work. It's a job. People pay good money to get a job they want.

(Declaration of Sherry Gregorio ("Gregorio Decl.") Ex. 1 (Docket No. 420-10)).

Defendant's argument here is tenuous at best. As the Court reads this excerpt, Plaintiff's counsel attempted to anchor the jury's calculations of non-economic damages based on what Plaintiff's dream job would be worth. It would be a stretch for any juror to have linked these remarks to the depth of Defendant's pockets as a candidate who had run multiple times for Los Angeles County Sheriff.

Accordingly, the Motion is **DENIED** as to the request for a new trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.   CV 14-5600-MWF (PLAx)                    Date:  August 31, 2016
Title:        Charles Antuna et al. -v- County of Los Angeles et al.

### 3. Shocks the conscience

#### a. *The result in light of the law and facts*

"Remittitur is said to be proper when no clear judicial error or pernicious influence can be identified, but when the verdict is so large as to shock the conscience of the court."  11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2815 (3d ed. & Supp. 2016) (internal footnotes omitted).  The determination of whether a remittitur is appropriate "is committed to the sound discretion of the trial court."  *Id.*

The Court recognizes that awarding damages to compensate for pain and suffering is an inherently subjective determination.  The Court also bears in mind the admonition that it may not lower the jury's award simply because it would have awarded a lesser amount had it been sitting as the fact-finder.  But the Ninth Circuit has also explained that "[t]he trial judge is in the best position to weigh the evidence of [a plaintiff's] embarrassment and humiliation."  *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1091 (9th Cir. 2009) (affirming the district court's order granting a new trial when "the minimal injuries suffered by [the plaintiff] could not support such a wide differential between the cost of [] medical treatment (an amount of less than $5,000) and the ultimate award ($175,000)" and the plaintiff's "pain and suffering lasted no longer than two weeks").

Nevertheless, "where the award is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption or prejudice or has misconceived or misconstrued the facts or the law," the Court is not only empowered but indeed ***obligated*** "to step in and correct the injustice."  *Filkins v. McAllister Bros.*, 695 F. Supp. 845, 854 (E.D. Va. 1988) (granting a new trial regarding a maritime worker's injuries because the $180,000 verdict was "shocking to the Court, grossly excessive and contrary to the evidence").

A "trial judge is ultimately responsible for the conduct of the litigation, and is also responsible for ensuring that a party is not a victim of a miscarriage of justice."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)					Date:  August 31, 2016
Title:		Charles Antuna et al. -v- County of Los Angeles et al.

*Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (holding that the district court did not abuse its discretion in granting new trial, where the trial judge was firmly convinced that impact of errors resulted in miscarriage of justice).  The law grants the Court discretion in granting a request for a new trial or remittitur for two reasons: "(1) the trial judge is the only objective person (with legal training), who was at the trial and able to see, hear, and evaluate the situation using firsthand knowledge; and (2) it would be impossible to construct any strict rule, which would be applicable to every conceivable motion for a new trial."  *See Tortu*, 556 F.3d at 1088.

This Court is aware of the evidence in the second trial, observed Plaintiff Martinez during direct and cross-examination, and listened to the arguments of counsel.  The Court is also aware of the difference between the damages Martinez would have received after a bench trial and what amount is simply shocking; the Court is not substituting its judgment for the second jury's.  Nonetheless, the Court was indeed shocked by the jury verdict, which is not a statement the Court has previously made after any trial.  Based on the law and the facts, the verdict was far too much, especially since the second jury chose not to award damages for future non-economic loss.  The inescapable conclusion is that the second jury either misunderstood or ignored the Court's instructions or was silently imposing additional punitive damages.

Accordingly, the Motion is conditionally denied upon Plaintiff's acceptance of a remittitur to $320,000.

### b. *Comparison to other verdicts*

There is case law authorizing a comparison to verdicts in other cases is an appropriate measure of excessiveness.  *See Mattschei v. United States*, 600 F.2d 205, 209 (9th Cir. 1979) (considering the award for loss of care, comfort, society, and household services in other comparable cases); *see also Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 684 (2d Cir. 1993) ("In determining whether a particular

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)	Date:  August 31, 2016
Title:	Charles Antuna et al. -v- County of Los Angeles et al.

award is excessive, courts have reviewed awards in other cases involving similar injuries, 'bearing in mind that any given judgment depends on a unique set of facts and circumstances.'"); *Thompson v. Nat'l R. R. Passenger Corp.*, 621 F.2d 814, 827 (6th Cir. 1980) ("When considering whether an award is excessive, the Court will consider other awards in other cases, as well as the nature and extent of the injuries, suffering, expenses, diminution of earning capacity, inflation and high cost of living, age and expectancy of life . . . ." (citations omitted)); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1275 (7th Cir. 1983) ("Here, the award is greater than most other awards given by the juries for damages in similar strip search cases involving the City of Chicago so as to be out of step with nascent trends, although at least one award has gone nearly as high."); *Wulf v. City of Wichita*, 883 F.2d 842, 875 (10th Cir. 1989) ("Our review of the record, informed by a review of awards granted in other comparable cases, indicates that the award should have been no *greater* than $50,000.").

The Court did not identify any case law specifically addressing whether the Court can consider the first jury's award of non-economic damages to Plaintiff's co-plaintiffs.  Although each case involves unique factual circumstances that bear on the reasonableness of the damages awarded, it is undisputed that the facts giving rise to Plaintiff's injuries as well as the nature of Plaintiff's injuries are most similar to retaliatory acts suffered by Plaintiff's co-plaintiffs.  Each of Plaintiffs co-plaintiffs prevailed on the same First Amendment retaliation claim against Defendant in the first trial and also suffered from similar retaliatory transfers and "freeway therapy."  If it is permissible for the Court to consider awards made in other comparable cases, it follows that the Court may also consider the awards made in the first trial when Plaintiff's co-plaintiffs are the most similarly situated and thus the most relevant comparison.

Below, the Court examines the second jury's award of non-economic damages in comparison with the awards received by Plaintiff's co-plaintiffs as well as other plaintiffs in comparable First Amendment retaliation cases.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)			Date:  August 31, 2016
Title:	Charles Antuna et al. -v- County of Los Angeles et al.

The first jury awarded each co-plaintiff the following past and present non-economic damages:

| Co-Plaintiff | Co-Plaintiff's Award | Plaintiff's Award as Multiples of Co-Plaintiff's Award |
|---|---|---|
| David Waters | $80,000 | 9x |
| Kevin Hebert | $35,000 | 21x |
| Charles Antuna | $48,000 | 16x |
| Casey Dowling | $72,000 | 10x |
| Robert Wheat | $72,000 | 10x |
| Louis Duran | $72,000 | 10x |
| Robert Tubbs | $25,000 | 30x |

As the chart demonstrates, Plaintiff's award of $750,000 for past and present non-economic damages is *9 to 30 times greater* than that of her co-plaintiffs.

Although individual reactions to the retaliation may vary, the Court finds that, in general, at least Hebert and Antuna were similarly situated as Plaintiff in terms of retaliatory transfers, "freeway therapy," and disruptions to domestic life.  In the first trial, Hebert testified that he was transferred to Pitchess Detention Center as retaliation against his political support for Paul Tanaka.  He further testified that, in retaliation, he received veiled threats against his son's career in the Sheriff's Department.  In addition, Antuna also suffered from "freeway therapy" and testified that, after the retaliatory transfer to Pitchess Detention Center, his daily commute increased to around 200 miles roundtrip.  Antuna further testified that the transfer disrupted and greatly inconvenienced his domestic life and prevented him from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)				Date:  August 31, 2016
Title:	Charles Antuna et al. -v- County of Los Angeles et al.

being able to return home every day, even though he was desperately needed at home to care for his wife who was battling cancer as well as his child with special needs. Despite the similarities between Plaintiff and Hebert as well as Antuna's situations, Plaintiff's award was 16x and 21x greater that that received by Hebert and Antuna, respectively.

The Court has no doubt that, had the first jury been tasked with awarding Plaintiff non-economic damages too, even after hearing the additional evidence presented during the second trial, the original jury would have awarded Plaintiff far less than the $750,000 sum that she received from the second jury. Regrettably, it is probable that the narrow scope, and consequently, limited testimony in the second trial contributed to what appears to have been an excessive verdict motivated by passion and prejudice.

In comparing Plaintiff's award with those of her co-plaintiffs, the Court is left with the firm conviction that the second jury's award of $750,000 is so grossly excessive that it should be reduced as a matter of fairness and justice to all the parties, including Plaintiff's co-plaintiff, in the litigation.

Neither party's brief cites any comparable cases. At the hearing, Plaintiff's counsel listed several successful California state cases he has worked on, but the Court concludes that federal cases involving successful First Amendment retaliation claims brought under 42 U.S.C. § 1983 are more appropriate for comparison. Moreover, the Court has no ability to examine those cases to determine how similar they are. In any event, this analysis is simply corroborative of the Court's independent determination based on the law and the evidence.

The Court's independent research identified seven cases of successful First Amendment retaliation claims in which non-economic damages were awarded. The awards ranged between $30,000 and $700,000. The Court examines each case in decreasing order in terms of the jury's non-economic damages award.

---

**CIVIL MINUTES—GENERAL**					13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)			Date:  August 31, 2016
Title:	Charles Antuna et al. -v- County of Los Angeles et al.

In the case of the **$700,000** award, a sheriff's deputy prevailed in his First Amendment retaliation suit for being terminated after he broadly publicized what he described to be corrupt and unlawful practices occurring in the Office of the Sheriff. *See Durham v. Jones*, 737 F.3d 291, 294 (4th Cir. 2013) (affirming that the sheriff was not entitled to qualified immunity).  The issue of remittitur, however, was never raised by the defendant, and, without reviewing the trial transcript, it is difficult for the Court to discern the evidence supporting the non-economic damages.

In *Rodriguez-Garcia v. Miranda-Marin*, the jury found that the plaintiff had been demoted and transferred in retaliation for her complaints about improper campaign tactics by the mayor and others.  610 F.3d 756, 773–74 (1st Cir. 2010).  The jury awarded the plaintiff **$350,000** in non-economic damages.  *Id.*  At trial, the plaintiff and her psychiatrist testified at length about the suffering the plaintiff endured as a result of her transfer and non-reinstatement.  *Id.*  The plaintiff testified that she had fainted at work and also "explained that the lack of duties in her new position made her feel 'very bad,' 'depressed,' 'like I was nothing, like I wasn't there . . . I continued being Executive Secretary, but I wasn't that. In practice, I wasn't that. And they let me know that everyday, having me there.'"  *Id.*  Furthermore, the transfer affected her home life as well, and she testified that she "withdr[e]w from [] family, from [her] children, [her] daily life. . . . [and] wanted to be alone, withdrawn, just thinking . . . [trying] to get away . . . ."  *Id.*  During this period, the plaintiff exhibited typical symptoms of depression, and over time, her condition grew more acute, requiring increased medication and repeated hospitalizations.  *Id.*

In *Evans v. Fogarty*, the jury awarded one of the plaintiffs, a mental health provider, **$300,000** and **$150,000** in non-economic damages against two senior officials at the Oklahoma Health Case Authority for retaliating against the plaintiff when he publicly spoke out about issues affecting the state's Medicaid system.  241 F. App'x 542, 561 (10th Cir. 2007).  Evidence presented at trial allowed the jury to find that the defendants acted to terminate the plaintiff's Medicaid contract, effectively putting him out of business.  *Id.* at 561.  Moreover, the plaintiff testified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)				Date:  August 31, 2016
Title:	Charles Antuna et al. -v- County of Los Angeles et al.

that he engaged in a long-running battle with the defendants to keep his facilities open, and as a result, he was left in large personal debt, causing him substantial stress over a number of years.  *Id.*  The plaintiff testified that he lost 25 to 30 pounds as a result of living in constant fear of retaliation by the defendants against his business.  *Id.*

In *Pucci v. Somers*, the jury awarded the plaintiff **$100,000** for non-economic loss, which the district court upheld.  834 F. Supp. 2d 690, 694 (E.D. Mich. 2011), *aff'd sub nom. Pucci v. Nineteenth Dist. Court*, 596 F. App'x 460 (6th Cir. 2015).  The district court reasoned that the award was not excessive where evidence showed that the terminated deputy court administrator had to take a lesser-paying job and that the termination was a career-ending blow, which caused her great personal pain.  *Id.* at 700.

In *Forsyth v. City of Dallas*, the jury awarded the two Dallas police officers **$50,000** and **$75,000** in non-economic damages.  91 F.3d 769 (5th Cir. 1996).  The two plaintiffs were transferred to night uniformed patrol after they spoke out about potentially unlawful conduct by their superiors in the department.  *Id.* at 773.  One plaintiff testified that he had suffered depression, sleeplessness, and marital problems.  *Id.* at 774.  The other plaintiff testified that she suffered depression, weight loss, intestinal troubles, and marital problems; that she had been sent home from work because of her depression; and that she had to consult a psychologist.  *Id.*

In *Faulk v. Duplantis*, the jury awarded the plaintiff **$75,000** in non-economic damages after he prevailed on his claim that he had been transferred to uniformed car patrol in retaliation for engaging in protected speech.  No. CIV.A. 12-1714, 2014 WL 7006002, at *1 (E.D. La. Dec. 10, 2014), *appeal dismissed* (July 6, 2015).  The plaintiff had testified that, prior to the transfer, "he worked days from 8:00 a.m. to 4:00 p.m., and had weekends and holidays off."  *Id.* at *2.  After the transfer, he worked 12 hours shifts, which included work on weekends and holidays.  *Id.*  According to the plaintiff, the transfer adversely affected his custody schedule with his two daughters because the girls could no longer spend nights with him and he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.   CV 14-5600-MWF (PLAx)                    Date:  August 31, 2016
Title:     Charles Antuna et al. -v- County of Los Angeles et al.

could no longer spend time with the girls individually.  *Id.*  Furthermore, the new schedule so disrupted the joint custody arrangement that he had with his former wife that they went to court over the matter.  *Id.*  The plaintiff testified that he had to endure the strained custody situation for about two years.  *Id.*  The plaintiff further testified that he had resorted to taking sleeping pills because of his new erratic schedule.  *Id.*  The district court ultimately remitted the award of $75,000 to **$30,000** because the plaintiff's "complaints were essentially those of inconvenience, albeit accompanied by stress."  *Id.* at *3.

Finally, in *Niebur v. Town of Cicero*, the jury awarded each plaintiff **$50,000** in non-economic damages after concluding that the plaintiffs had been retaliated against as whistleblowers for reporting suspected wrongdoing between the town officials and a towing company.  212 F. Supp. 2d 790, 822–23 (N.D. Ill. 2002).  The district court upheld the award on the grounds that the plaintiffs had "presented evidence that they suffered distress, belittlement, and humiliation" as a result of being dismissed as police chief and deputy police chief in retaliation by the town president.  *Id.*

The average award of non-economic damages in the above seven cases is approximately $200,000.  Therefore, the second jury's award of $750,000 not only exceeds the highest award of $700,000, but is nearly four times the average.  In comparing Plaintiff's award with those in the above cases, the second jury's award of $750,000 is so grossly excessive that it shocks the judicial conscience.

"Many times there is no identifiable aspect of the trial which can be pointed to as the basis for an excessive or inadequate verdict.  But, when any excessive or inadequate verdict occurs, the cause 'may be inferred simply from the unreasonable size of the figure the jury has returned.'"  *Filkins*, 695 F. Supp. at 851 (citation omitted).  Even though the record contains no evidence that the second jury was motivated by passion or prejudice, the verdict is so excessive that it creates the unmistakable impression that it was not the product of a fair and impartial decision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 14-5600-MWF (PLAx)                     Date:  August 31, 2016
Title:      Charles Antuna et al. -v- County of Los Angeles et al.

Constitutional violations by public officials are a serious and intolerable offense.  However, in this instance, the principles of justice require a reduction of the past and present non-economic damages awarded by the second jury.

An appropriate damages award generally should fall "within a reasonable range" of comparable awards.  *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) (holding that awards of $400,000 in compensatory damages and $625,000 and $650,000 in punitive damages were excessive in police brutality case after considering amounts awarded in other comparable cases).

There is no doubt in the Court's mind that Plaintiff's injuries were severe and demand a sizable compensatory damages award.  Even so, comparable cases demonstrate that the $750,000 award Plaintiff received was grossly excessive.  Evidence supporting Plaintiff's non-economic damages, such as "freeway therapy," disruption to home life, and depression, are most similar to the injuries suffered by Hebert ($35,000), Antuna ($48,000), as well as the plaintiffs in *Rodriguez-Garcia* ($350,000), *Forsyth* ($50,000 and $75,000), and *Faulk* ($30,000).  The plaintiff in *Rodriguez-Garcia* suffered injuries similar in terms of severity to those endured by Plaintiff, if not worse, yet that plaintiff received less than one-half of the non-economic damages the second jury awarded Plaintiff.  For instance, Plaintiff did not faint at work or require increased medication and repeated hospitalizations.  Although Plaintiff was fearful of the dangers of working at Twin Towers, she testified that she never personally experienced an assault or attack.  Co-plaintiff Antuna and the plaintiff in *Faulk* also experienced significant disruptions to their home life, especially in terms of their children, but these plaintiffs only received 6.4% and 4% of the non-economic damages the second jury awarded Plaintiff.

Therefore, both the first verdicts and other federal cases are corroborative of the Court's independent conclusion that the highest possible verdict consistent with justice would be $320,000.

---

**CIVIL MINUTES—GENERAL**                                          17

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| **Case No.** | CV 14-5600-MWF (PLAx) | **Date:** | **August 31, 2016** |
| **Title:** | Charles Antuna et al. *-v-* County of Los Angeles et al. | | |

### III.  CONCLUSION

Accordingly, the Motion is **DENIED** as to a new trial as such, but is **GRANTED** as to the remittitur.

On or before **September 6, 2016**, Plaintiff is **ORDERED** to notify the Court in writing of her choice between accepting the reduced award or a new trial on past and present non-economic damages.

IT IS SO ORDERED.